DONOVAN & DONOVAN
Barbara M.  Donovan, Esq.
California State Bar Number 232187
The Senator Building
105 West F Street, Fourth Floor
San Diego, California  92101
Telephone:  (619) 696-8989

Attorney for Defendant Pina-Flores

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HON. MARILYN L. HUFF)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08-CR 1556-H |
| | ) | |
| Plaintiff, | ) | Date: July 7,  2008 |
| | ) | Time:  2:00 P.M. |
| v. | ) | |
| | ) | |
| JOSE  PINA- FLORES, | ) | STATEMENT OF FACTS AND |
| | ) | MEMORANDUM OF POINTS AND |
| Defendant. | ) | AUTHORITIES IN SUPPORT OF |
| | ) | DEFENDANT'S MOTIONS |
| | ) | |

**I.**

**STATEMENT OF FACTS**

The following statement of facts is based, in part, on materials received from the government.  The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard.

On or about May 3, 2008, border patrol agents noticed a tractor trailer following a suspicious driving route in the Tecate area of Highway 94 and Emery Road.  More specifically, a white tractor trailer exited Emery Road onto Highway 94 and began to travel eastbound.  Agents found this suspicious as most of the tractor trailers which operate in the Tecate area do not use

1    Emery Road to access Highway 94 as there is a dangerous turn where the two roads meet and it

2    was also a Saturday.   Immediately upon seeing the tractor trailer the agent went to the location

3    on Emery Road and discovered fresh footprints of a large group of people in the brush on the side

4    of Emery Road.  It appeared to the agents that someone had attempted to conceal the footprints.

5    The agent then radioed to other agents positioned on Highway 94 that he suspected that this

6    trailer had picked up undocumented aliens on Emery Road.   The agents then initiated a stop of

7    of the tractor trailer after it entered onto I-8 and traveled east.  The tractor trailer stopped

8    approximately one mile east of Kitchen Creek Road.

9           The agent approached the tractor trailer and identified himself as a U.S. Border Patrol

10   Agent to the driver later identified as Jose Pina-Flores.  When the agent questioned the driver as

11   to his citizenship the defendant admitted that he was a national of Mexico and did not have a visa

12   to enter the U. S.   Mr. Flores admitted that he entered the U.S. illegally by jumping over the

13   border fence near Tecate, California on May 2, 2008.  The defendant was then placed under

14   arrest.  A canine was used to sniff the trailer shortly after it was stopped.  The dog alerted to the

15   presence of either concealed humans or narcotics at the rear of the tractor trailer.  A large group

16   of people were hidden in the front section of the trailer behind a facade of large bundles of scrap

17   cardboard piled to within three feet of the ceiling.  Each of the sixty-one (61) people admitted

18   being citizens and nationals of Mexico illegally present in the U.S.  All were arrested and

19   transported along with Mr. Pina-Flores to the processing center in Tecate, California.

20          The defendant was Mirandized in Spanish and was willing to answer questions without

21   an attorney present.  He stated that he entered the U.S. to continue working as a tractor trailer

22   driver for a smuggling organization that operates in the Tecate, California area.  He stated that he

23   had smuggled approximately seven loads of illegal aliens since February 15, 2008.  He described

24   his customary route of travel as eastbound SR-94 to Buckman Springs Road, north bound to I-8,

25   westbound I-8 through the Pine Valley checkpoint and returning to the truck lot in Otay Mesa.

26   He said he was to get $250 for each alien in the load.

27          Three of the people being held as material witnesses stated that they made arrangements

28   in Tijuana, Baja California Mexico to be smuggled into the United States for a fee ranging

1   from $1000 to $3500.   They said that they had entered the U.S. illegally with the help of a alien

2   smuggler/ foot guide near Tecate, California.   They said that they walked about three hours

3   before they were picked up by the tractor trailer.   None of the material witnesses could identify

4   Mr. Pina-Flores as the driver.

5            The defendant was charged in a six count indictment with three counts of a violation of 8

6   U.S.C. Sec., 1324(a)(2)(B)(ii), Bringing in Illegal Aliens for Financial Gain and Aiding and

7   Abetting and three counts of 1324(a)(1)(A)(ii) and (v)(II), Transportation of Illegal Aliens and

8   Aiding and Abetting.  He is presently in custody.

9

10                                          **II.**

11                          **MOTION TO COMPEL DISCOVERY**

12            Mr. Pina-Flores moves for the production by the government of the following discovery.

13   This request is not limited to those items that the prosecutor knows of, but rather includes all

14   discovery listed below that is in the custody, control, care, or knowledge of any "closely related

15   investigative [or other] agencies" under <u>United States v. Bryan</u>, 868 F.2d 1032 (9th Cir. 1989):

16

17   **A.**    <u>Mr. Pina-Flores is Entitled to Discovery of His Statements</u>.

18            Pursuant to Rule 16(a)(1)(A), <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and the Fifth and

19   Sixth Amendments to the United States Constitution, Mr. Pina-Flores requests disclosure of any

20   statements, whether oral, written, or recorded made by him which are in the possession, custody,

21   or control of the government, or which by the exercise of due diligence may become known to

22   the government, regardless of to whom made.  This includes copies of any written or recorded

23   statements he made; the substance of any statements made by Mr. Pina-Flores which the

24   government intends to offer in evidence at trial.  Mr. Pina-Flores also specifically requests that

25   all arrest reports which relate to the circumstances surrounding his arrest or any questioning, if

26   such reports have not already been produced in their entirety, be turned over to him.  This request

27   includes, but is not limited to, any rough notes, records, recordings (audio or visual), reports,

28   transcripts or other documents in which statements of Mr. Pina-Flores are contained. Mr. Pina-

1    Flores is also requesting any statements he is alleged to have made during any arrest which was

2    charged in state court which is connected in any way to the conspiracy charged herein,   It also

3    includes the substance of any oral statements which the government intends to introduce at trial,

4    and any written summaries of the defendant's oral statements contained in the handwritten notes

5    of the government agent.  This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and <u>Brady</u>

6    <u>v. Maryland</u>, 373 U.S. 83 (1963).  <u>See also</u> <u>United States v. Johnson</u>, 525 F.2d 999 (2d Cir.

7    1975); <u>United States v. Lewis</u>, 511 F.2d 798 (D.C. Cir. 1975); <u>United States v. Pilnick</u>, 267 F.

8    Supp. 791 (S.D.N.Y. 1967); <u>Loux v. United States</u>, 389 F.2d 911 (9th Cir.), <u>cert. denied</u>, 393

9    U.S. 867 (1968).  Mr. Pina-Flores also requests any response to any <u>Miranda</u> warnings which

10   may have been given to him, on the date of his arrest.  <u>See</u> <u>United States v. McElroy</u>, 697 F.2d

11   459 (2d Cir. 1982).  This request includes all statements made by Mr. Pina-Flores to state

12   officials as well or any individuals whom are cross-designated.

13   **B.**    <u>Prior Convictions or Prior Similar Acts</u>.

14          Rule 16(a)(1)(B) of the Fed. R. Crim. P., provides that "upon request of the defendant, the

15   government shall furnish to the defendant such copy of her prior criminal record, if any, as is

16   within the possession, custody, or control of the government . . . ."  Mr. Pina-Flores, therefore,

17   requests all evidence, documents, records of judgments and convictions, photographs and

18   tangible evidence, and information pertaining to any prior arrests and convictions or prior bad

19   acts.  Evidence of prior record is available under Fed. R. Crim. P. 16(a)(1)(B).  Evidence of prior

20   similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609;

21          Mr. Pina-Flores also requests the government be ordered to provide discovery of any

22   prior similar acts which the government intends to introduce into evidence pursuant to Fed. R.

23   Evid. 404(b).  Mr. Pina-Flores must have access to this information in order to make appropriate

24   motions to exclude the use of such evidence at trial.  <u>See</u> <u>United States v. Cook</u>, 608 F.2d 1175

25   (9th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1034 (1980).

26          Mr. Pina-Flores requests a pre-trial conference on the morning of trial in order to resolve

27   any issues raised by the government's intention of introducing evidence pursuant to Fed. R. Evid.

28   404 and 609.

**C.**    Mr. Pina-Flores is Entitled to Examine the Evidence the Government Intends to Rely Upon at Trial.

Rule 16(a)(1)(C) authorizes a defendant to inspect and copy or photograph all books, papers, documents, photographs, and tangible objects which are in the possession, custody or control of the government and which are material to the preparation of the defense or intended for use by the government as evidence in it case during trial.

(1)  Specifically, Mr. Pina-Flores requests the opportunity to inspect and photograph all evidence seized from Mr. Pina-Flores, all fingerprint analysis done on any of the evidence in this case, all identification procedures utilized by the government agents;

(2)  The defense requests all evidence seized as a result of any search, either warrantless or with a warrant, in this case.  This is available under Fed. R. Crim. P. 16(a)(1)(C); and any books, papers, documents, photographs, tangible objects, or copies or portions thereof which the government intends to use as evidence-in-chief at trial;

(3)  Mr. Pina-Flores requests all arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to Mr. Pina-Flores. These are available under Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(I). Mr. Pina-Flores specifically requests that all dispatch tapes or any other audio or visual tape recordings, including the transcripts and recordings of any wiretapped conversations, which exist and which relate in any way to his case and or his arrest be preserved and provided in their entirety; and

(4)  Mr. Pina-Flores requests all other documents and tangible objects, including clothing, notes, books, papers, documents, photographs, and copies of any such items which were obtained from or belong to Mr. Pina-Flores.

(5)  The defense requests all photographs, video tapes or other material used to memorialize the surveillance done in this case.

**D.**    Mr. Pina-Flores is Entitled To All Evidence Tending To Affect The Credibility of The Prosecution's Case.

Pursuant to Brady v. Maryland, 373 U.S. 83 (1963), United States v. Agurs, 427 U.S. 97 (1976), and Giglio v. United States, 405 U.S. 150 (1972),  Mr. Pina-Flores requests the Court to

1    order the government to immediately disclose all evidence in its possession favorable to Mr.

2    Pina-Flores on the issue of guilt and which tends to affect the credibility of the prosecution's

3    case. This request specifically includes any impeaching evidence such as the prior records, of

4    any material witnesses in this case. This request also includes any expressed or implied promises

5    made by the government to any material witnesses in exchange for their testimony in this case.

6    See, e.g., United States v. Bagley, 473 U.S. 667 (1985); Napue v. Illinois, 360 U.S. 264 (1959);

7    United States v. Gerard, 491 F.2d 1300 (9th Cir. 1974).

8            The defense requests any and all evidence including but not limited to:

9            (1) any evidence that any prospective government witness is biased or prejudiced against

10   the defendant, or has a motive to falsify or distort his or her testimony. Pennsylvania v. Ritchie,

11   480 U.S. 39 (1987); United States v. Strifler, 851 F.2d 1197 (9th Cir.), cert. denied, 489 U.S.

12   1032 (1988); United States v. Brumel-Alvarez, 991 F.2d 1452 (9th Cir. 1992) (Ninth Circuit

13   Court reversed Judge Enright for failure to turn over the "Levine Memorandum" which contained

14   information critical about a government witness);

15          (2) any evidence that any prospective government witness has engaged in any criminal act

16   whether or not resulting in a conviction. See Rule 608(b), Federal Rules of Evidence and Brady;

17   any evidence that any prospective witness is under investigation by federal, state or local

18   authorities for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir.), cert.

19   denied, 474 U.S. 945 (1985);

20          (3) any evidence, including any medical or psychiatric report or evaluation, tending to

21   show that any prospective witness' ability to perceive, remember, communicate, or tell the truth

22   is impaired; and any evidence that a witness has ever used narcotics or other controlled

23   substance, or has ever been an alcoholic. United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988);

24   Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980);

25          (4) the name and last known address of each prospective government witness. See

26   United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 576

27   (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United

28   States v. Cook, 608 F.2d 1175, 1181 (9th Cir. (1979) (defense has equal right to talk to

                                                6                              08-CR 1556-H

1    witnesses).

2        (5) the name and last known address of every witness to the crime or crimes charged (or

3    any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a government

4    witness.  <u>United States v. Cadet</u>, 727 F.2d, 1453 (9th Cir. 1984);

5        (6)  the name of any witness who made an arguably favorable statement concerning the

6    defendant or who could not identify him or who was unsure of his identity, or participation in the

7    crime charged.  <u>Jackson v. Wainwright</u>, 390 F.2d 288 (5th Cir. 1968); <u>Chavis v. North Carolina</u>,

8    637 F.2d 213, 223 (4th Cir. 1980); <u>Jones v. Jago</u>, 575 F.2d 1164, 1168 (6th Cir.), <u>cert. denied</u>,

9    439 U.S. 883 (1978); <u>Hudson v. Blackburn</u>, 601 F.2d 785 (5th Cir. 1979), <u>cert. denied</u>, 444 U.S.

10   1086 (1980).

11

12   **E.**    <u>Mr. Pina-Flores is Entitled to Any Information That May Result in a Lower Sentence
         Under The Guidelines</u>.

13       This information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  This

14   request includes any cooperation or attempted cooperation by the defendant, as well as any

15   information that could affect any base offense level or specific offense characteristic under

16   Chapter Two of the Guidelines.  Also included in this request is any information relevant to a

17   Chapter Three adjustment, a determination of the defendant's criminal history, or any other

18   application of the Guidelines;

19   **F.**    <u>The Defense Requests the Preservation of All Evidence</u>.

20       The defendant specifically requests that all audio or video tapes such as dispatch tapes or

21   wiretap evidence, or any other physical evidence that may be destroyed, lost, or otherwise put out

22   of the possession, custody, or care of the government and which relate to the arrest or the events

23   leading to the arrest in this case or in the other charges alleged in the indictment be preserved.

24   This request includes, but is not limited to, any samples (including but not limited to blood,

25   urine, fingerprints or narcotics) used to run any scientific tests, any narcotics, and any evidence

26   seized from any third party.

27       It is requested that the government be ordered to <u>question</u> all the agencies and individuals

28   involved in the prosecution and investigation of this case to determine if such evidence exists,

1    and if it does exist to inform those parties to preserve any such evidence;

2    **G.**    The Defense Requests All Jencks Material.

3    The defense requests all material to which Defendant is entitled pursuant to the Jencks

4    Act, 18 U.S.C. § 3500, reasonably in advance of trial, including audio and visual tape recordings,

5    such as dispatch tapes, recordings of any wiretapped conversations or consensual taped

6    conversations,  and all notes or reports with regard to his preparation for testifying.  A verbal

7    acknowledgment that "rough" notes constitute an accurate account of the witness' interview is

8    sufficient for the report or notes to qualify as a statement under § 3500(e)(1).  Campbell v.

9    United States, 373 U.S. 487, 490-92 (1963).  In United States v. Boshell, 952 F.2d 1101 (9th Cir.

10   1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the

11   interview the notes are then subject to the Jencks Act;

12   **H.**    Mr. Pina-Flores requests all other information relevant to his defense.

13

14   The defendant requests disclosure of evidence including but not limited to the following:

15   (1) Any statement that may be "relevant to any possible defense or contention" that he

16   might assert.  United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982);

17   (2)  Notice and a Written Summary of Any Expert

     Testimony.

18

19   Under Rule 16(a)(1)(E), effective December 1, 1993, "[a]t the defendant's request, the

20   government shall disclose to the defendant a written summary of testimony the government

21   intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case-in-

22   chief at trial.  This summary must describe the witness' opinions, the basis and the reasons

     therefore, and the witness' qualifications."

23

24   Mr. Pina-Flores specifically requests the government give him a written summary and

25   notice of any expert testimony the government intends to introduce;

26   (3)  Giglio Information.  Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the

27   defendant requests all statements and/or promises express or implied made to any government

28   witnesses, in exchange for their testimony in this case, and all other information which could

1  arguably be used for the impeachment of any government witnesses; and

2        (4) <u>Henthorn Search</u>.  The defense requests that the prosecutor or some other attorney

3  familiar with the case be ordered to examine the personnel files for evidence of perjurious

4  conduct or other like dishonesty, or any other material relevant to impeachment, or any

5  information that is exculpatory to Mr. Pina-Flores and that material be provided to the defense.

6  <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991); <u>United States v. Dominguez-Villa</u>, 954

7  F.2d 562 (9th Cir. 1992).

8        (5) Reports of Scientific Tests or Examinations

9        Pursuant to Fed. R. Crim. P. 16(D), Mr. Pina-Flores requests the reports of all tests and

10  examinations conducted upon the evidence in this case, including but not limited to any

11  **fingerprint testing** done upon any evidence seized in this case;

12        (6) <u>Brady Material</u>

13        The defendant requests all documents, statements, agents' reports, and tangible evidence

14  favorable to the defendant on the issue of guilt and/or **which affects the credibility** of the

15  government's case.  Impeachment as well as exculpatory evidence falls within <u>Brady's</u> definition

16  of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States</u>

17  <u>v. Agurs</u>, 427 U.S. 97 (1976);

18        (7)  <u>Personnel Records of Government Officers Involved in the Arrest</u>

19        The defendant requests all citizen complaints and other related internal affairs documents

20  involving any of the immigration officers or other law enforcement officers who were involved

21  in the investigation, arrest and interrogation of him, pursuant to <u>Pitchess v. Superior Court</u>, 11

22  Cal.3d 531, 539 (1974).  Because of the sensitive nature of these documents, the government is

23  the only source for obtaining these documents.

24  **III.**

25  **THE GOVERNMENT MUST GIVE NOTICE OF THE**
26  **GENERAL NATURE OF ANY EVIDENCE IT WILL ATTEMPT**
    **TO OFFER UNDER FED. R. EVID. 404(b)**

27        Under the amendments to Fed. R. Evid. 404(b), which became effective December 1,

28  1991, "upon request of the accused, the prosecution . . . shall provide reasonable notice in

1 | advance of trial . . . of the general nature . . ." of any evidence the government proposes to

2 | introduce under Fed. R. Evid. 404(b) at trial.  The defendant requests that such notice be given

3 | three weeks before trial in order to give the defense time to adequately investigate and prepare

4 | for trial.

5 | ### IV.

6 | ### MR. PINA-FLORES SHOULD BE GIVEN ATTORNEY CONDUCTED VOIR DIRE

7 | Under Fed. R. Crim. P. Rule 24(a), "the court  may permit the defendant or the

8 | defendant's attorney and the attorney for the government to conduct the examination of

9 | prospective jurors or may itself conduct the examination . . . ."

10 | This case involves the transportation of illegal aliens into the  United States.  It is the

11 | experience of counsel for Mr. Pina-Flores that prospective jurors in the Southern District of

12 | California have often had strong reaction to individuals charged with such high profile offenses.

13 |

14 | ### V.

15 | ### MR. PINA-FLORES REQUESTS LEAVE TO FILE FURTHER MOTIONS

16 | As noted above at the time of preparation of these motions, Mr. Pina-Flores and defense

17 | counsel has received 260 pages of discovery from the government.  If counsel receives additional

18 | discovery with new evidence which necessitates the filing of additional motions  it is  requested

19 | that defense counsel be allowed the opportunity to file such  motions.

20 | ### CONCLUSION

21 | For the foregoing reasons, it is respectfully requested that the court grant the above

22 | motions.

23 | DATED: June 23, 2008                    Respectfully submitted,

24 |

25 |

26 | S/ Barbara M. Donovan
   | **BARBARA M.  DONOVAN**

27 | Attorney for Defendant Pina-Flores

28 |

DONOVAN & DONOVAN
Barbara M. Donovan
Attorney at Law
The Senator Building
105 West F. Street - 4th floor                          U.S.D.C. No.08-CR-1556-H
San Diego, CA 92101

## DECLARATION OF SERVICE

I, undersigned, say: I am over 18 years of age, employed in the County of San Diego, California, in which county the within mentioned delivery occurred, and not a party to the subject cause. My business address is 105 West F. Street, San Diego, California. I served the Defendant's Notice of Motion, Motion and Memorandum of Points and Authorities, of which a true and correct copy of the documents filed in this cause is affixed, by electronic filing to:

Luella Caldito, Assistant U.S. Attorney
Office of the United States Attorney
880 Front Street, Room 6293
San Diego, CA 92188

The electronic filing was done by me at San Diego, California, on June 23, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 23, 2008 at San Diego, California.

s/ Barbara M. Donovan

_____
Barbara M. Donovan